UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY BENNETT,

                Petitioner,               **DECISION AND ORDER**
                                            **No. 09-CV-06608T**

    -vs-

SUPERINTENDENT
RONALD MOSICICKI

                Respondent.


_____

## I.    Introduction

*Pro se* Petitioner Anthony Bennett ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered May 8, 1996, in New York State, County Court, Niagara County (Amy J. Fricano, J.), convicting him, after a jury trial, of two counts of Rape in the First Degree (N.Y. Penal Law ("Penal Law") § 130.35 [1], [3]), one count of Rape in the Second Degree (Penal Law § 130.30), and five counts of Sexual Abuse in the First Degree (Penal Law § 130.65 [1],[3]).[1]

For the reasons stated below, habeas relief is denied and the petition is dismissed.

_____

[1]     On direct appeal, the Appellate Division, Fourth Department reversed two of the five counts of Sexual Abuse in the First Degree (counts two and three of the indictment) and dismissed those counts of the indictment. See People v. Bennett, 52 A.D.3d 1185, 1186 (4th Dep't 2008).

## II.   Factual Background and Procedural History

Under Indictment No. 94-440, Petitioner was indicted and charged with eleven counts of Sexual Abuse in the First Degree (Penal Law § 130.65 [1], [3]), four counts of Rape in the First Degree (Penal Law § 130.35 [1], [3]), and one count of Rape in the Second Degree (Penal Law § 130.30).   The charges arose from incidents that occurred between 1991 and 1994 involving Petitioner and his three minor children, F.B., N.B. and A.B.[2]   See Indictment No. 94-440.

Prior to trial, the People moved to introduce evidence of numerous incidents of domestic violence as prior bad acts and uncharged crimes.   A Ventimiglia[3] hearing was conducted on March 27, 1996.   At the close of the hearing, the trial court found that five of the eighteen incidents of prior domestic violence the People sought to introduce could be used in the People's case-in-chief.   Hr'g Mins. [H.M.] 134.   The trial court later modified its ruling to permit four acts when it discovered that one of the five acts occurred after the charged conduct.   Trial Trans. [T.T.] 45-46.

During a three-day jury trial, F.B., N.B. and A.B., among others, testified for the People.   Each of the children testified, with varying specificity, that they had witnessed various instances

---

[2]      F.B. and N.B. are females, and A.B. is male. At the time of the incidents, all of these children were under the age of eleven-years-old.

[3]      A hearing pursuant to People v. Ventimiglia, 52 N.Y.2d 350 (1981), is used to determine whether evidence of a defendant's prior uncharged crimes may be admissible at trial, by weighing its probative value against its prejudicial effect.

of domestic violence, wherein Petitioner had physically injured their mother Sencerray Jenkins ("Jenkins"). Additionally, F.B. testified that on numerous occasions, over a three-year period from 1991-1994, Petitioner touched her breasts and engaged in sexual intercourse with her. T.T. 49-106. N.B. testified that, on one occasion while she was living with her parents, Petitioner had "touched her butt." T.T. 229. She also testified that, during this time, Petitioner "used to pick [F.B.] up and carry her upstairs and put her in a room and lock the door." T.T. 230. She testified that she also saw Petitioner, on one occasion, touch A.B.'s "private" while Petitioner and A.B. were in the kitchen. T.T. 234. A.B. testified that, on several occasions while he was living with his parents, Petitioner touched his penis. He also testified that, during this time, he saw, on one occasion, Petitioner pick F.B. up in his arms and carry her upstairs. A.B. testified that, on this particular occasion, he went upstairs and found the bedroom door locked. A.B. testified that he heard his sister crying and heard her tell their father to "get off her." A.B. testified that, from a gap underneath the bedroom door, he could see his father's and sister's feet on the bedroom floor "moving around." T.T. 259-293.

Jenkins testified that Petitioner was the father of F.B., N.B., and A.B., and that she had been in a relationship with him for fourteen years. She testified that their relationship, overall, was a tumultuous one and that, on occasion, she was afraid of him. Jenkins also testified to various instances of domestic

violence that she suffered at the hands of Petitioner, which resulted in physical injuries. Jenkins also testified that, one particular occasion, she walked into the living room and saw Petitioner touching A.B.'s penis. T.T. 136-167.

Petitioner did not testify at trial. Petitioner's parents, Evelyn and Otis Bennett, testified for the defense. T.T. 341-352, 406-412.

At the close of evidence, Petitioner's attorney successfully moved for the dismissal of count 1, counts 4 and 5, and counts 7 and 9 of the Indictment. The trial court dismissed counts 10 and 11 *sua sponte*. T.T. 419-424. Of the nine counts on which the jury was asked to deliberate, Petitioner was convicted on eight, as follows: (1) count two charging Sexual Abuse in the First Degree as alleged to have occurred between December 26 and 31, 1991 wherein he was charged with hand to breast contact with F.B. (on the basis of her age); (2) count three charging Sexual Abuse in the First Degree as alleged to have occurred between December 26 and 31, 1999 wherein he was charged with hand to breast contact with F.B. (by forcible compulsion); (3) count six charging Sexual Abuse in the First Degree as alleged to have occurred between December 15 and 31, 1992 wherein he was charged with hand to breast contact with F.B. (on the basis of her age); (4) count 8 charging Sexual Abuse in the First Degree as alleged to have occurred between January 1 and February 28, 1993 wherein he was charged with penis to vagina contact with F.B. (on the basis of her age); (5) count twelve charging Rape in the First Degree as alleged to have occurred

-4-

between September 1 and 15, 1993 wherein he was charged with having had sexual intercourse with F.B. (on the basis of her age); (6) count thirteen charging Rape in the First Degree as alleged to have occurred between September 1 and 15, 1993 wherein he was charged with having had sexual intercourse with F.B. (by forcible compulsion); (7) count fourteen charging Rape in the Second Degree as alleged to have occurred between April 1 and June 30, 1994 wherein he was charged with having had sexual intercourse with F.B. (on the basis of her age); and (8) count sixteen charging Sexual Abuse in the First Degree as alleged to have occurred between April 1 and June 30, 1994 wherein he was charged with hand to buttocks contact with N.B. (on the basis of her age).  Petitioner was found not guilty of count fifteen charging Sexual Abuse in the First Degree as alleged to have occurred between April 1 and June 30, 1994 wherein he was charged with hand to penis contact with A.B. (on the basis of his age).  T.T. 512-535.

Petitioner was subsequently sentenced to an aggregate indeterminate term of 16 to 48 years imprisonment.  Sentencing Mins. [S.M.] 10-14.

On June 6, 2008, the Appellate Division, Fourth Department ("Fourth Department") unanimously modified the judgment of conviction by reversing those parts convicting Petitioner of Sexual Abuse in the First Degree under counts two and three of the indictment.  As modified, the judgment of conviction was affirmed, and leave to appeal was denied.  People v. Bennett, 52 A.D.3d 1185 (4th Dep't 2008); lv. denied, 11 N.Y.3d 734 (2008).

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) a _Rosario_ violation; (2) ineffective assistance of trial counsel; (3) that the admission of evidence of uncharged crimes deprived him of his right to a fair trial; and (4) harsh and excessive sentence.  _See_ Pet. ¶ 22A-D (Dkt. No. 1).

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." _Williams v. Taylor_, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not

*dicta*) of the Supreme Court existing at the time of the relevant state-court decision.  <u>Williams</u>, 529 U.S. at 412;  <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case.  <u>Williams</u>, 529 U.S. at 413;  <u>see also</u> <u>id.</u> at 408-10.  "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently."  <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001).  Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable."  <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."  <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);  <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert.</u>

denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003).  A state
court's findings "will not be overturned on factual grounds unless
objectively unreasonable in light of the evidence presented in the
state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340
(2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a
person in custody pursuant to a judgment of a State court shall not
be granted unless it appears that . . . the applicant has exhausted
the remedies available in the courts of the State. . . ." 28 U.S.C.
§ 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838,
843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828
(2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion
requirement is not satisfied unless the federal claim has been
'fairly presented' to the state courts." Daye v. Attorney General,
696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S.
1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

A procedural default generally bars a federal court from
reviewing the merits of a habeas claim. Wainwright v. Sykes, 433
U.S. 72 (1977).  Federal habeas review is prohibited if a state
court rests its judgment on a state law ground that is "independent
of the federal question and adequate to support the judgment."
Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman
v. Thompson, 501 U.S. 722, 729 (1991));  accord Jones v. Stinson,

229 F.3d 112, 117 (2d Cir. 2000).  A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)).  A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

A federal court may review a claim, notwithstanding the petitioner's default, if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750; see also Levine, 44 F.3d at 126; Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991).  A petitioner may establish cause by pointing to "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753.  A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. See Reed v. Ross, 468 U.S. 1, 12 (1984). Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate

that failure to do so will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

## IV.  Petitioner's Claims

## 1.  Rosario Violation

Petitioner contends, as he did on direct appeal, that he was deprived of his right to a fair trial when the People failed to disclose certain Rosario[4] materials, to wit:  the videotaped grand jury examinations of Petitioner's three children.  See Pet. ¶ 22A. The Fourth Department rejected this claim on a state procedural ground because Petitioner failed to properly preserve the issue for appellate review.   See  Bennett,  52  A.D.3d  at  1186-87. Consequently,  as  discussed  below,  this  claim  is  procedurally defaulted from habeas review.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment.  See Coleman, 501 U.S. at 729. Here, the state court relied on New York's preservation rule (codified at N.Y. Crim. Proc. L. ("CPL") § 470.05(2)) to deny Petitioner's claim because it had not been properly preserved for appellate review.  See Bennett, 52 A.D.3d at 1186-87.  The Second

---

[4]      Pursuant to People v. Rosario, the state must provide a criminal defendant with the pretrial statements of any witness who will be called to testify on behalf of the prosecution.  People v. Rosario, 9 N.Y.2d 286 (1961). This rule has been codified in the New York Criminal Procedure Law ("CPL"); the prosecutor is obliged to "make available to the defendant any written or recorded statement made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony." CPL § 240.45 [1][a].

Circuit has determined that CPL § 470.05(2) is an independent and adequate state procedural ground. See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). The Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of Petitioner's alleged Rosario violation claim.

This Court, however, may reach the merits of Petitioner's claim, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750. While Petitioner does not specifically allege ineffective assistance of counsel as cause for the default, he does raise ineffective assistance of trial counsel as a stand-alone claim on the basis that counsel "failed to preserve appellate issues." Pet. ¶ 22B. A claim of ineffective assistance of counsel may establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); McCleskey v. Zant, 499 U.S. 467, 494 (1991); United States v. Frady, 456 U.S. 152, 168 (1982). However, in order to constitute cause, counsel's ineffectiveness must itself rise to the level of a constitutional violation. Id. Here, Petitioner's stand-alone ineffective assistance of counsel claim is without merit (Section "IV, 2" below). Because Petitioner does not show that his trial attorney was constitutionally ineffective, he consequently cannot establish "cause" to excuse the

procedural default.  See Zayas v. Ercole, 08-CV-1037 (CBA), 2009 U.S. Dist. LEXIS 127012, *39 (E.D.N.Y. Nov. 9, 2009) ("Since petitioner's trial counsel's performance was, in the aggregate, reasonable . . . petitioner cannot establish cause for his failure to preserve the claim.").  Moreover, Petitioner has failed to demonstrate that this Court's failure to review the claim will result in a miscarriage of justice.  Thus, the claim is dismissed as procedurally defaulted.

In any event, even if this claim was not procedurally defaulted, it would still not provide a basis for habeas relief. A "[p]etitioner's claim[] that the prosecutor committed a Rosario violation by not turning over [evidence] does not form a basis for federal habeas relief because th[is] claim[] derive[s] from state law." McBean v. Warden, 9:08-cv-0150 (LEK), 2008 U.S. Dist. LEXIS 99444, *28-29 (N.D.N.Y. Dec. 9, 2008); see also Goston v. Rivera, 462 F.Supp. 2d 383, 394 (W.D.N.Y. 2006) ("[petitioner's] claim relating to the prosecutor's Rosario violation is not a federal constitutional claim cognizable on habeas review.") (citing Lyon v. Senkowski, 109 F.Supp. 2d 125, 139 (W.D.N.Y. 2000)).  To this extent, Petitioner's alleged Rosario violation claim is not cognizable.

## 2.  Ineffective Assistance of Trial Counsel

Petitioner argues that he received ineffective assistance of trial counsel based on: (1) trial counsel's failure to preserve the

alleged <u>Rosario</u> violation;[5] and (2) trial counsel's failure to "inform [him] of time he could receive by going to trial by not taking a 5-15 year plea offer." Pet. ¶ 22B.  The former issue, which was raised on direct appeal and rejected on the merits,[6] is meritless.  The latter claim, which is raised for the first time in the habeas petition, is unexhausted and meritless.[7] <u>See</u> 28 U.S.C. § 2254(b)(2).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  Deficiency is measured by

---

[5]     In Ground Two of the petition, Petitioner states, in part, that he received ineffective assistance of counsel because "counsel failed to preserve appellate issues." Pet. ¶ 22B.  He does not specify, however, which "appellate issues" he is referring to.  Given that he has raised an alleged <u>Rosario</u> violation as a stand-alone claim in the habeas petition and that that claim was found to be unpreserved for appellate review, the Court will construe this claim as ineffective assistance of counsel based on counsel's failure to preserve the alleged <u>Rosario</u> violation.

[6]     The Fourth Department ruled as follows: "We reject the further contention of defendant that counsel's failure to object to the alleged <u>Rosario</u> violation deprived him of effective assistance of counsel.  When viewed in its totality as of the time of the trial, defense counsel's representation was meaningful." <u>Bennett</u>, 52 A.D.3d at 1187 (internal citations and quotations omitted).

[7]     The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims. <u>See, e.g.</u>, <u>Love v. Khulman</u>, 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y. Dec. 12, 2001); <u>Cruz v. Artuz</u>, 97 Civ. 2508 , 2002 U.S. Dist. LEXIS 11150 (E.D.N.Y. June 24, 2002); <u>Toland v. Walsh</u>, 02 Civ. 0399, 2008 U.S. Dist. LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); <u>Hammock v. Walker</u>, 224 F. Supp. 2d 544 (W.D.N.Y. 2002).  A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim.  <u>See</u> <u>Hernandez v. Lord</u>, 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228 (S.D.N.Y. July 21, 2000) (discussing cases applying this standard).  Under either of these standards, Petitioner's claim is meritless.

an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." <u>Id.</u> To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id.</u>

**(A)   Failure to Preserve Alleged <u>Rosario</u> Violation**

Petitioner claims that he received ineffective assistance of trial counsel based on counsel's failure to object to an alleged <u>Rosario</u> violation (see Section "IV, 1" above). Pet. ¶ 22B. This claim is meritless.

The record reflects that, prior to trial, Petitioner's three children were examined by videotape and their examinations were presented to the grand jury. Each of the children then testified at trial. There is nothing in the record before this Court that suggests that the prosecution failed to disclose the examinations to the defense and/or failed to do so in a timely manner. Rather, the record reveals that Petitioner's attorney used the grand jury examination of F.B. when he cross-examined her at trial. T.T. 108-

109.   To this extent, there was no basis for trial counsel to object, thereby preserving the issue for appellate review.

Moreover, Petitioner has made no showing that, but for counsel's alleged error in failing to object, there is any probability -- let alone a reasonable one -- that the outcome of his trial would have been different.  See Henry v. Poole, 409 F.3d 48, 63-64 (2d Cir. 2005) ("'The question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'") (quoting Strickland, 466 U.S. at 695).

Accordingly, the state court's adjudication of this portion of Petitioner's ineffective assistance of counsel claim is neither contrary to nor an unreasonable application of Strickland, and is dismissed.

**(B)   Failure to Inform Petitioner of Sentence at Trial**

Petitioner contends that he received ineffective assistance of trial counsel because counsel failed to inform him of the maximum sentence he could receive at trial versus the sentence under the plea offer.  Pet. ¶ 22B.  This claim is meritless.

An attorney's failure to communicate a plea offer to his client, or to advise his client adequately about the plea offer, may constitute constitutionally deficient assistance.  See, e.g., Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999) (defense counsel grossly underestimated defendant's potential maximum

sentence); <u>United States v. Gordon</u>, 156 F.3d 376, 380 (2d Cir. 1998) ("defense counsel in a criminal case must advise his client of the merits of the government's case, of what plea counsel recommends, and of the likely results at trial").

To prevail on such a claim, petitioner must show that (1) the attorney failed to communicate a plea offer or provide adequate advice about the plea and sentencing exposure; and (2) there is a reasonable probability that but for the attorney's deficient performance, petitioner would have accepted the plea offer. <u>See</u> <u>Purdy v. United States</u>, 208 F.3d 41, 49 (2d Cir. 2000); <u>Cullen</u>, 194 F.3d at 404.

A petitioner claiming ineffective assistance of counsel on this basis must provide objective evidence, beyond his own "self-serving, post-conviction testimony," that he would have pled guilty had he received proper advice. <u>Gordon</u>, 156 F.3d at 380-81. Objective evidence may include a disparity between the plea offers and the actual sentence, and whether the plea offers were stated in petitioner's presence in open court. <u>Cullen</u>, 194 F.3d at 407; <u>Alexander v. Walker</u>, No. 03 Civ. 8440 (NRB), 2004 U.S. Dist. LEXIS 1642, *19-21 (S.D.N.Y. Aug. 19, 2004); <u>see also</u> <u>Custodio v. United States</u>, 945 F. Supp. 575, 579 (S.D.N.Y. 1996) (concluding that defendant's "belated claim that he would have pleaded guilty is frivolous" where defendant continued to maintain his innocence both during and after trial).

Petitioner cannot prevail on this claim.  The record reflects that a pre-trial hearing and conference occurred on November 30, 1995.  At the start of this hearing and conference, the prosecutor set forth the terms of a plea offer, in which Petitioner was given the opportunity to plead guilty to one count of Rape in the First Degree and two counts of Sexual Abuse in the Second Degree.  Hr'g Mins. of 11/30/11 2.  In response to the plea offer, Petitioner's attorney, in the presence of Petitioner, stated, "Your Honor, I've just had the opportunity to relay that to my client this morning and we haven't had the opportunity to fully discuss it."  Id.  The trial court judge then stated, "I guess you don't want it.  Why is that you didn't receive a plea offer before today?"  In response, defense counsel stated, "I've been very busy, your Honor, quite frankly.  I had a hearing all day across the hall yesterday.  I was on trial last week and I haven't really been available to have the opportunity to sit down and discuss it with the district attorney."  Id.  The trial court then proceeded to conduct the scheduled hearing.

Even *assuming arguendo* that Petitioner was unaware of the maximum sentence he faced at trial in relation to the terms of the plea offer, Petitioner has not shown that he would have accepted the plea offer had he known since he maintained his innocence throughout the proceedings.  At sentencing, Petitioner made the

following statement in which he adamantly maintained that he is and was innocent throughout the duration of the proceedings:

> Through this whole course of this indictment I still maintain my innocence in this matter.  I don't condone any of these charges and I never do hurt any children.  As far as these charges is concerned, if someone is found guilty I believe they should get the punishment that is deserved but my only option in the case was to exercise my right to a trial which I was found guilty of but I still maintain my innocence in the course of this whole -- this whole thing.  I would never do anything to try to hurt my children.  I always tried to raise 'em to the best of my ability to this point and to this day.  I don't know why they would have brought these accusations against me.

S.M. 9.  Furthermore, the Petitioner does not argue in the instant petition that he would have been willing to accept the guilty plea or that he would have, in fact, accepted it had he been informed of the sentencing consequences of proceeding to trial in relation to the terms of the plea.  Since Petitioner has not shown that he was willing to accept a plea offer, the Court concludes that Petitioner has failed to prove counsel's performance fell below the constitutional standard for effective assistance of counsel.  This portion of Petitioner's ineffective assistance of trial counsel claim, therefore, is meritless and is dismissed.

In sum, the Court finds that Petitioner's claim that he was deprived of his constitutional right to effective assistance of counsel provides no basis for habeas relief and is dismissed in its entirety.

3.   **Admission of Uncharged Crime Evidence**

Petitioner argues, as he did on direct appeal, that he was deprived of his right to a fair trial when the trial court admitted evidence of prior uncharged crimes, namely, evidence of four prior uncharged instances of domestic violence.  See Pet. ¶ 22C.  The Fourth Department rejected this claim on the merits.[8]  See Bennett, 52 A.D.3d at 1187.  As discussed below, this claim provides no basis for habeas relief.

A state trial court's decision to admit evidence of a criminal defendant's uncharged crimes or bad acts constitutes an evidentiary ruling based on state law.  See Sierra v. Burge, 06 Civ. 14432, 2007 U.S. Dist. LEXIS 91132, *14-19 (S.D.N.Y. Nov. 30, 2007).  As such, state court evidentiary rulings are generally not cognizable on habeas review.  See Roldan v. Artuz, 78 F.Supp.2d 260, 276 (S.D.N.Y. 2000).  Rather, federal courts reviewing evidentiary matters may issue a writ of habeas corpus only if the petitioner demonstrates that the alleged evidentiary error violated a constitutional right and that the error "was so extremely unfair that its admission violates fundamental conceptions of justice."

---

[8]      The Fourth Department held as follows: "We further reject defendant's contention that County Court erred in admitting evidence of prior uncharged instances of domestic violence witnessed by the victim.  Prior and concurrent threats and violence to the victim's family are admissible as proof of the element of forcible compulsion and to explain the victim's failure to reveal the ongoing sexual assaults.  Here, the evidence of four prior uncharged instances of domestic violence witnessed by the victim was admissible for the purpose of establishing the element of forcible compulsion and the victim's delayed reporting."  See Bennett, 52 A.D.3d at 1187 (internal citations and quotations omitted) (alterations in original).

Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998) (internal quotation omitted). "For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Id. (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir.1992) and citing Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985) (evidence must be "crucial, critical, highly significant")).

In general, evidence of uncharged crimes is inadmissible in a criminal trial due to the danger that the jurors will convict due to their perception that the defendant is predisposed to commit crime rather than determining the defendant's guilt or innocence based upon a consideration of the evidence regarding the charged offense. See e.g., People v. Molineux, 168 N.Y. 264 (1901). However, in Molineux the New York Court of Appeals held that evidence of other crimes or bad acts may be admitted to the extent that it is relevant to an issue other than the defendant's criminal tendency, such as motive, intent, modus operandi, common scheme or plan, or identity. Id. at 293. Thus, New York law is "well settled that 'where the evidence of prior, uncharged criminal conduct has a bearing upon a material aspect of the People's case other than the accused's general propensity toward criminality . . . the probative value of the evidence justifies its admission,

-20-

notwithstanding the potential for incidental prejudice[.]'" People v. Lee, 284 A.D.2d 412 (2nd Dep't 2001) (citation omitted); see also People v. Cook, 93 N.Y.2d 840, 841 (1999) ("[E]vidence of a defendant's prior abusive behavior toward a complainant may be admissible to prove the element of forcible compulsion in a rape case . . . . This is true even though, as in this case, the defense is not consensual sex, but that the rape never occurred and that the complainant's allegation was a lie.").

In this case, F.B. testified to the following:  that, while she was living with her parents, she had witnessed four instances of domestic violence, all of which resulted in varying levels of physical injury to her mother;  that, when her parents fought, it made her afraid and she feared for her mother's safety; that she failed to come to her mother's aid when her parents fought because she was afraid she would get in trouble with her father; and that it was fear that delayed her disclosure of the abuse she suffered at the hands of her father.  T.T. 54-72, 99-100.  The evidence of domestic violence perpetrated against the victim's mother (and witnessed by F.B.) was therefore relevant to establishing the element of forcible compulsion under New York law,[9] and for

---

[9]     In counts eleven and thirteen of the indictment, Petitioner was charged with Rape in the First Degree (with respect to F.B.) where "forcible compulsion" is an element of the crime.  See Penal Law § 130.35 [1].  Under Penal Law § 130.00, "'forcible compulsion' means to compel by either use of physical force or a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped." Penal Law § 130.00 [8][a], [b].

explaining why F.B. had delayed disclosing the sexual assaults perpetrated against her. See People v. Greene, 306 A.D.2d 639, 642 (2003) ("Prior and concurrent threats and violence to the victim's family . . . are admissible as proof of the element of forcible compulsion and to explain the victim's failure to reveal the ongoing sexual assaults."); see also People v. Higgins, 12 A.D.3d 775, 777-78 (2004).

Moreover, the trial court clearly instructed the jury that the evidence of prior instances of domestic violence could be used only for limited purposes. The trial court judge stated, in her final charge to the jury, as follows:

> I have also allowed the People to introduce in evidence that on other specific occasions this defendant engaged in the striking of family members. I tell you that such evidence is no proof whatsoever that this defendant possessed a propensity or diposition to comitt the crime charged – crimes charged in this indictment. It is not offered for such a purpose and must not be considered by you for that purpose. Instead, the People offered such evidence solely for the purpose of proving an element of some of the crimes charged in this indictment which I will refer to as forcible compulsion and which I will define for you later. This evidence may be considered by you solely as it relates to the element of forcible compulsion as I will describe it. I charge you that that evidence may be considered by you only for that limited purpose and for none other.

T.T. 510-511.

-22-

As a matter of law, the jury must be presumed to have followed the trial court judge's instructions concerning the limited use that it could make of the uncharged crimes evidence.  See Spencer v. Texas, 385 U.S. 554, 562-63 (1967); Herring v. Meachum, 11 F.3d 374, 378 (2d Cir. 1993) (citing Greer v. Miller, 483 U.S. 756, 766 n.8 (1987));  see also Kanani v. Phillips, No. 03 Civ. 2534 (PKC) (AJP), 2004 U.S. Dist. LEXIS 20444, *66 (S.D.N.Y. Oct. 13, 2004) (no unfairness when "the trial judge gave a very specific limiting charge to the jury to ensure that jurors considered information about the uncharged crimes only for appropriate purposes").

In any event, the Supreme Court has yet to establish clearly when the admission of prior uncharged crimes under state evidentiary laws can constitute a federal due process violation. See Parker v. Woughter, No. 09 Civ. 3843 (GEL), 2009 U.S. Dist. LEXIS 52419, *4-5 (S.D.N.Y. June 9, 2009) ("[P]etitioner cites no Supreme Court case, and the Court is aware of none, holding that the admission of evidence of uncharged crimes violates the Due Process Clause of the Fourteenth Amendment.").  It follows that the trial court judge's decision to admit the evidence subject to limiting instructions cannot be said to be "contrary to" or an "unreasonable application of" clearly-established federal law. See Williams, 529 U.S. at 412-13.

Accordingly, Petitioner's claim provides no basis for habeas relief and is dismissed.

### 4.     Harsh and Excessive Sentence

Petitioner contends, as he did on direct appeal, that his sentence was harsh and excessive.   See Pet. ¶ 22D.   The Fourth Department rejected this claim on the merits.[10]   See Bennett, 52 A.D.3d at 1187.   As discussed below, this claim is not cognizable on habeas review.

It is well-settled that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range.   Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.");   White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing Underwood v. Kelly, 692 F.Supp. 146 (E.D.N.Y. 1988), aff'd mem., 875 F.2d 857 (2d Cir. 1989));   accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).   Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in the instant proceeding.

Here, Petitioner was sentenced to two to six years on each count of Sexual Abuse in the First Degree, six to eighteen years on

---

[10]     The Fourth Department held as follows: "Finally, we conclude that the sentence is not unduly harsh or severe."   Bennett, 52 A.D.3d at 1187.

each of the convictions for Rape in the First Degree, and two to six years on the conviction for Rape in the Second Degree. These sentences were ordered to run consecutive for a total of 16-48 years imprisonment. S.M. 10-14. These terms are within the ranges prescribed by New York law. See Penal Law §§ 130.35 [1], [3]; 130.30; 130.65 [1], [3].

Accordingly, Petitioner's claim that his sentence was harsh and excessive is not cognizable, and is dismissed.

## V.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with

United States Court of Appeals for the Second Circuit in accordance
with the requirements of Rule 24 of the Federal Rules of Appellate
Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     June 14, 2011
           Rochester, New York